8 F.3d 281
 John Frederick GEISELBRETH, et al., Plaintiffs,
John Frederick Geiselbreth, Jeffrey Ashley Geiselbreth,
etc., and Courtney Anne Geiselbreth, etc.,
Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE CO., Defendant-Appellant.
 No. 93-7159.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 2, 1993.
 
 F. Keith Ball, William C. Griffin, Steen, Reynolds, Dalehite & Currie, Jackson, MS, for defendant-appellant.
 Mary Marvel Fyke, Steven Mark Wann, Maxey, Pigott, Wann & Begley, Jackson, MS, for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellees filed suit to recover from Allstate on an excess coverage provision for uninsured motorist liability. The district court held that under the Mississippi Supreme Court's decision in Mississippi Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320 (Miss.1986), they are entitled to collect $75,000, the limits of Allstate's excess coverage, notwithstanding that their damages and settlement with the primary carrier were far below the policy limits of the primary insurance. We disagree with the district court's interpretation of Garrett and accordingly reverse.
 
 BACKGROUND
 
 2
 An uninsured motorist's automobile collided with the vehicle in which Melissa Anne Geiselbreth, the wife and mother of the appellees, was riding on July 8, 1990.[1] Mrs. Geiselbreth was killed. The owner of the vehicle in which Mrs. Geiselbreth was a passenger was insured by a division of Kemper Insurance Companies for $600,000. Mr. and Mrs. Geiselbreth carried an Allstate Insurance Company policy whose stacked limits of uninsured/under insured coverage were $75,000.
 
 
 3
 Soon afterward, attorneys for the appellees contacted Allstate and Kemper to discuss settlement. Negotiations led appellees and Kemper to reach a structured settlement agreement which provided for a total payout of $400,000 over several years to Mrs. Geiselbreth's heirs. The present value of the structured settlement cost Kemper $316,404.
 
 
 4
 The Geiselbreths next pursued their claim against Allstate, the secondary uninsured motorists carrier. Allstate denied the claim, relying on the following policy language:
 
 
 5
 If the insured person was in, on, getting into or out of: (a) a vehicle you do not own which is insured for this coverage under another policy ..., this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after the other insurance has been exhausted.
 
 
 6
 Notwithstanding this explicit language, the district court held that the Geiselbreths were only required to obtain what was "reasonably available" under Kemper's primary insurance policy before they could seek coverage under Allstate's excess policy. After holding an evidentiary hearing, the district court found that the Geiselbreths had "reasonably exhausted" Kemper's primary policy limits. After the Geiselbreths and Allstate entered into a factual stipulation concerning appellees' damages, the court calculated Allstate's liability at $75,000, the entire amount available under Allstate's excess policy. Allstate has appealed.
 
 DISCUSSION
 
 7
 Confronted with extreme and compelling facts, the Mississippi Supreme Court recently permitted recovery under an uninsured motorist excess coverage clause after a claimant had settled with the primary insurer for less than its policy limits. In Garrett, supra, the primary uninsured motorist coverage was $10,000. Garrett's injuries far exceeded that amount, but he chose to settle his claim for $7,517 against the primary carrier and then made demand on his insurer for excess coverage. The insurer refused to pay, relying on a provision that stated:
 
 
 8
 [I]nsurance under this endorsement shall apply only as excess insurance over any other similar insurance available to each insured and applicable to such automobile as primary insurance....
 
 
 9
 Because Garrett had settled for less than $10,000, the insurer contended, he had not used up the available primary coverage and could not avail himself of excess coverage. The Mississippi Supreme Court, like the lower courts, ruled against the excess insurer. Castigating the excess insurer's construction of "available" primary insurance for having "little relationship to the real world," the court held:
 
 
 10
 In this context, where there is a maximum potential recovery of $10,000, Garrett's settlement for $7,517 was prima facie reasonable.
 
 
 11
 487 So.2d at 1324. No claimant, the court observed, could be compelled to go to trial to seek an additional award of about $2,500 from the primary insurance company, given the costs, uncertainties and delay inherent in litigation. The Mississippi Supreme court therefore held that "available," as used in the policies
 
 
 12
 ... refers to those sums reasonably obtainable by Garrett having in mind the nature and extent of his injuries, the facts regarding the liability of the uninsured motorist, the amount of the settlement offered, discounted by the costs and risks of seeking a greater sum.
 
 
 13
 487 So.2d at 1325.
 
 
 14
 The district court here accepted an artfully broad construction of Garrett advocated by the Geiselbreths that very nearly eviscerates the notion of excess coverage as insurance that protects an insured after the policy limits have been reached and exceeded on primary coverage.[2] According to appellees, Garrett merely requires an injured person to reach a reasonable settlement with the primary carrier in order then to qualify for excess coverage. Because the trial court found that appellees' settlement with the primary carrier here was "reasonable" under all the circumstances, it concluded that they had "exhausted" primary coverage.
 
 
 15
 This reading of Garrett is insupportable for several reasons. First, there was no dispute in Garrett that the injured man's claim for damages far exceeded the $10,000 primary insurance coverage. Garrett's claim was a clear candidate for reimbursement by the excess carrier. Appellees here, by contrast, stipulated that their damages amount to $401,404, and that this stipulation is "equivalent to a jury verdict being returned in [that] amount." The stipulated amount is $200,000 below the limits of Kemper's primary coverage. Even if this stipulation were not expressly equated to a jury verdict but instead constituted an estimate of the Geiselbreths' damages, it was so far below the limits of primary coverage as to render any claim on excess insurance unjustifiable.
 
 
 16
 Second, Garrett addresses the question of the "availability" of the primary insurance coverage remaining after settlement in a very practical way. Comparing the amount of primary coverage remaining on the policy--$2,583--with the legal costs, delay and uncertainty if Garrett had been required to file suit for the last dollar of a $10,000 primary policy, the Mississippi Supreme Court held that his settlement for $7,517 was "prima facie reasonable." The same kind of common sense evaluation compels a finding that the Geiselbreths did not exhaust Kemper's primary insurance coverage because they left more than $200,000 of such coverage on the table after settlement. Had the Geiselbreth family been persuaded that the severity of their injuries and claims arising from Mrs. Geiselbreth's death justified recovering more than a $316,000 present value from the insurance company, it would have been eminently worthwhile for them to pursue a lawsuit. The potential additional reward from litigation with the primary carrier was 100 times greater than that available to Garrett. See Robinette v. American Liberty Ins. Co., 720 F.Supp. 577, 580 (S.D.Miss.1989) (holding that plaintiff had not "substantially exhausted" primary policy by leaving $65,000 on the table).
 
 
 17
 Third, while Garrett derives from a peculiar and peculiarly compelling set of facts, the appellees would extrapolate its holding to permit them to pursue excess uninsured motorists insurance whenever a settlement within the primary coverage is deemed "reasonable." Thus, they persuaded the district court that because they settled for a reasonable sum with Kemper, and it was financially inconvenient for them to sue Kemper for further relief within the primary coverage, they could arbitrarily assign a portion of their damages against the excess carrier. If Garrett were read this way, the case would obliterate the distinction between primary and excess insurance coverage. It makes no sense to hold that a party whose damages are probably within the primary policy limits may, after "reasonably" settling with the primary carrier, automatically recover from the excess carrier. Garrett did not go so far, because it was agreed that the plaintiff's damages were well over the limit of primary coverage.
 
 
 18
 Garrett does not hint how the Mississippi Supreme Court would allocate liability between a primary and excess carrier given the far more generous primary coverage here and a claim within primary policy limits. If excess carriers are to be held at risk based on settlements that are for far less than the limit of primary insurance coverage, surely they would seek and be entitled to participate in the negotiations leading to the initial settlement. Moreover, their premium structure would have to be re-oriented to take account of the increased exposure that would follow such an expansive reading of Garrett. As a court bound by Erie to follow, not to lead, state law, we are not entitled to venture into such a policymaking extension of Garrett as appellees desire.
 
 
 19
 Because Garrett does not support the Geiselbreths' claim for excess uninsured motorist coverage from Allstate, the judgment of the district court must be REVERSED.
 
 
 
 [1]
 The driver of the car that killed Geiselbreth was an uninsured/underinsured motorist under Mississippi law. Miss.Code Ann. § 83-11-101, et seq. His policy paid the "per person" liability limit of $10,000 to her estate. Her heirs also received $40,000 from Mrs. Geiselbreth's life insurance policy
 
 
 [2]
 See 8A Appleman, Insurance Law and Practice § 4909 at 383 (1981): "An 'excess' clause generally provides that if other valid and collectible insurance covers the occurrence in question the 'excess' policy will provide coverage only for liability above the maximum coverage of the primary policy or policies.... [S]ettlement between an insurance company which is primarily liable and its insured, even though a full, final and complete settlement, does not affect the priority of payment as regards the other insurance clauses unless the amount of settlement exhausts the policy limits; to hold otherwise would allow the companies primarily liable to transfer the liability by making a token settlement."