NATIONWIDE GENERAL INSURANCE COMPANY, Plaintiff,

v.

Helen Joyce PERRY and Robert Perry, Defendants.

No. CIV.A.3:96–CV–578WS.

United States District Court, S.D. Mississippi, Jackson Division.

July 9, 1997.

Marc A. Biggers, Upshaw, Williams, Biggers, Beckham & Riddick, Greenwood, MS, for Plaintiff.

Edward P. Lobrano, Jr., Lobrano, Butler & Kirk, Ridgeland, MS, for Defendants.

## ORDER

WINGATE, District Judge.

Before the court is plaintiff's motion for summary judgment filed pursuant to Rule 56(a), Federal Rules of Civil Procedure.[1] Plaintiff Nationwide General Insurance Company ("Nationwide") instituted the instant complaint for declaratory judgment under the auspices of Rule 57 of the Federal Rules of Civil Procedure,[2] seeking this court's ruling whether it owes its insureds, the Perrys, any sums under the Nationwide uninsured motorist provision, where the Perrys had other insurance, deemed by Nationwide to be primary and where the Perrys did not substantially exhaust the policy limits of the other insurance. The Perrys, Helen Joyce and Robert, defendants herein, oppose the motion, arguing that the real question here is not that of "substantial exhaustion," but "available coverage." The parties agree that the issue before the court is one of law, as the parties have stipulated to the relevant material facts. Persuaded that Nationwide is entitled to summary judgment under the undisputed, material facts and the applicable law, this court grants Nationwide's motion and dismisses this case.

### Facts

An August 5, 1993, collision between a casino bus owned by the Lady Luck Casino of Mississippi and an uninsured motorist brought the instant parties together in this lawsuit. The Perrys were among the many passengers seated on the casino bus and allegedly injured by the negligence of the uninsured motorist. The casino bus was insured by St. Paul Fire and Marine Insurance Company ("St. Paul"). St. Paul's policy provided uninsured motorist coverage in the amount of $1,000,000.00 per accident (Stipulation 4). The St. Paul policy also provided medical payments coverage in the amount of $5,000.00 per person (Stipulation 5).

There were numerous occupants of the casino bus. However, St. Paul has resolved all claims for a total payment of $323,718.48 out of the $1,000,000.00 available in uninsured motorist coverage (Stipulation 8). Robert Perry received $55,000.00 and his wife, Helen Perry, received $70,000.00. These clams were settled on April 11, 1995 (Stipulation 7).

In the summer of 1996, the Perrys, through counsel, made demands upon Nationwide for additional payments under the Nationwide uninsured motorist provision. Prior to August 5, 1993, the Perrys were

---

1. Rule 56(a) of the Federal Rules of Civil Procedure provides:

    (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

2. Rule 57 of the Federal Rules of Civil Procedure provides:

    The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C. § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.

insureds under a policy issued by Nationwide.

The Nationwide policy, like most, if not all policies, contains "other insurance" provisions. The provisions in question read as follows:

**Other Insurance.** This clause applies to the extent coverage and limits are in excess of that required by the Uninsured Motorist Coverage Statute. If there is other insurance:

1. On a motor vehicle you do not own, we will pay the insured loss not covered by other insurance. However, this insurance will apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of the other insurance.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. The company's share is its proportion of the total insurance limits for the loss.

**Duplicate Payment.** We will make no duplicate payment to or for any insured for the same element of loss.

The parties in a joint "Stipulation" have agreed to all of the foregoing facts. The entire Stipulation, which addresses even more, is set out below:

### Stipulation

The parties through counsel stipulate as follows:

1. The policy attached as Exhibit "A" to the Complaint for Declaratory Judgment is a true and correct copy of the applicable insurance policy involved in this dispute.

2. Plaintiffs Helen Joyce Perry and Robert Perry were both passengers in a casino bus owned by the Lady Luck Casino and which was struck by an "uninsured motorist" within the meaning of Mississippi law on August 5, 1993.

3. Robert and Helen Joyce Perry both sustained bodily injuries as a result of the negligence of the uninsured motorist in question.

4. The casino bus had a policy of insurance with St. Paul Insurance Company applicable to it which provided $1,000,000.00 in uninsured motorist bodily injury coverage.

5. The St. Paul policy also provided medical payments coverage with a limit of $5,000.00 per person.

6. A settlement was reached between St. Paul and Helen Joyce Perry and Robert Perry for $70,000.00 and $55,000.00 respectively as reflected by a Full and Final Release of all claims, a copy of which is attached hereto as Exhibit "A."

7. In addition to the uninsured motorist payment, St. Paul paid $5,000.00 to Helen Joyce Perry and $5,000.00 to Robert Perry under the medical payments coverage.

8. St. Paul has settled all outstanding claims of individuals making UMBI claims. All claims have been settled and St. Paul has paid out a total of $323,718.48 in its settlement of all claims. This figure includes the amounts paid to the Perrys. Further information concerning St. Paul payments is set forth in a letter from Whit Johnson, dated 12/13/96, attached hereto as Exhibit "B."

9. The parties agree that whether or not the St. Paul UMBI coverage was or has been "substantially exhausted" is an issue of law.

10. The parties agree that the Nationwide policy provisions, the Mississippi uninsured motorist statutes and the applicable decisions of the Mississippi Supreme Court or relevant Federal decisions control the disposition of this case.

Nationwide, being of the opinion that no sums are due and owing, instituted the instant complaint for declaratory judgment. It is Nationwide's position that the St. Paul policy is primary and that under the "other insurance" provisions of the policy no sums are due and owing since the St. Paul policy was not exhausted or even "substantially exhausted." As earlier stated, this court agrees with Nationwide's position.

### Law

Inasmuch as this court has jurisdiction over this dispute pursuant to diversity jurisdiction, Title 28 U.S.C. § 1332,[3] this

---

**3.** Title 28 U.S.C. § 1332 provides in pertinent part:

court applies the substantive law of Mississippi to this dispute. The district court applies the law of the forum state where the cause of action occurred unless with respect to some particular issue some other state has a more significant relationship to the occurrence or to the parties. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). No one disputes that Mississippi substantive law here applies.

Nor does anyone dispute that Mississippi distinguishes primary versus excess coverage and recognizes as valid "other insurance" provisions. *Geiselbreth v. Allstate Ins. Co.,* 8 F.3d 281 (5th Cir.1993); *Robinette By and Through McMahon v. American Liberty Ins. Co.,* 720 F.Supp. 577 (S.D.Miss.1989); *Mississippi Farm Bureau Mut. Ins. Co. v. Garrett,* 487 So.2d 1320 (Miss.1986); *Dixie Ins. v. State Farm Mut.,* 614 So.2d 918 (Miss. 1992).

Further, Mississippi follows the rule that unambiguous policy provisions are to be given their plain meaning. *Employers Mutual Casualty Co. v. Nosser,* 250 Miss. 542, 164 So.2d 426 (1964); *Perry v. Southern Farm Bureau Cas. Ins. Co.,* 251 Miss. 544, 170 So.2d 628 (1965). The Fifth Circuit in *Foreman v. Continental Cas. Co.,* 770 F.2d 487 (5th Cir.1985), noted:

> Under Mississippi Law, "... insurance contracts, like all other contracts where clear and unambiguous, must be construed exactly as written." To this law we are bound.

*Foreman,* at p. 489.

It is quite clear from the "other insurance" provision of the Nationwide's policy, that in this instance, the Nationwide policy provides excess coverage. The Nationwide policy applies only where the plaintiffs' damages are large enough so that full recovery cannot be made due to an inadequate amount of primary coverage. *See Geiselbreth v. Allstate Ins. Co.,* 8 F.3d 281 (5th Cir.1993) (a situation virtually identical to that presented here was considered).

In this case, St. Paul recognized its role as the primary carrier. St. Paul was con-

tractually bound under its policy to pay to the Perrys all sums to which they were legally entitled to recover up to their policy limits of $1,000,000.00. While plaintiffs now claim that less than total recovery was had by the $125,000.00 joint settlement paid to both claimants, they had the available option to litigate the value of their claim with St. Paul had they so desired. St. Paul still has over $650,000.00 in coverage available even after having paid the Perrys' settlement of $125,000.00. The Perrys' contract with Nationwide provides coverage only where the primary limits are exhausted (or at least "substantially exhausted" under *Garrett* ). The St. Paul policy has not been exhausted or even "substantially exhausted" and, thus, under the contract between the Perrys and Nationwide, no obligation to make a payment can exist.

The Perrys do not quarrel with any of the facts here. Bound by their Stipulation, they agree that St. Paul still has over $650,000.00 in coverage available. What the Perrys argue is that when they entered into their settlements with St. Paul, from their perspective at the time, they had exhausted all of the coverage available to them. They explain it thusly: after the accident, approximately thirty (30) people claimed to have been injured. Lawsuits were filed and the Circuit Court of Adams County, Mississippi, consolidated them. The ad damnum clauses of the first two lawsuits alone requested in excess of the one million dollars ($1,000,-000.00) uninsured motorist coverage afforded by St. Paul. Meanwhile, say the Perrys, they "were faced with dire and necessitous financial circumstance, incurring astronomical medical bills; they suffered loss of income for an extended period of time and resultant inability to pay financial obligations as and when they became due and actually almost lost their home as a result of the financial burden (paragraph 13, page 3 of Perrys' Response to Nationwide's Motion for Summary Judgment)." These dire circumstances, say the Perrys, rendered "unavail-

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States; ...

able" any additional sums they might collect under the St. Paul policy.

This court is not persuaded. The Perrys have submitted no competent evidence showing they had any just cause to question the availability of St. Paul's coverage. Exhibit "B" to Nationwide's motion for summary judgment contains the list of claimants who were paid over $1,000.00. That exhibit shows that one Arlene Stevens was paid $80,-000.00 on November 21, 1994. Arlene Stevens' case against St. Paul was one of the two lawsuits the Perrys state had ad damnum clauses in excess of St. Paul's one-million dollar ($1,000,000.00) coverage. The Perrys settled their cases after the settlement by Arlene Stevens and were paid on April 11, 1995. The Perrys thus knew before making their decision to settle that Arlene Stevens and others had already opted to resolve their claims for far less than St. Paul's policy limit.

Finally, this court notes that the Perrys have not submitted any urging case authority supporting their position. Indeed, the case law is unkind to them. *See Geiselbreth v. Allstate Ins. Co.,* 8 F.3d 281 (5th Cir.1993).

A district court is to grant summary judgment to the movant when the court determines that the movant is entitled to a judgment under the law and the material, undisputed facts. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Nationwide has carried its burden. The salient facts here are not disputed. St. Paul was the primary carrier. St. Paul still has more than $650,000.00 in coverage available. The Nationwide policy between Nationwide and the defendant insureds contains an "other insurance" policy which requires the Perrys to exhaust coverage under the primary carrier's policy before defendants may resort to coverage under Nationwide's policy. The defendants under the undisputed facts have simply not exhausted St. Paul's coverage. Accordingly, this court holds that Nationwide is entitled to a grant of summary judgment.