**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60760
(Summary Calendar)

EDWARD STUART; JUDY STUART,

Plaintiffs-Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; ET AL.,

Defendants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
(99-CV-114)

June 4, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Edward and Judy Stuart (collectively "Stuart") appeal the district court's order granting summary judgment to State Farm Mutual Automobile Insurance and State Farm Fire and Casualty Company ("State Farm"). Because we find that the district court did not err, we affirm.

Factual and Procedural History

On November 7, 1997, Edward Stuart, a resident of Mississippi, was injured in a motor vehicle accident involving an uninsured motorist in Canbury, New Jersey.[2] Stuart was a passenger in a limousine owned and operated by A-1 Limousine, Inc. and insured by Liberty Mutual Insurance Company ("Liberty Mutual"). Liberty Mutual's policy provided $1,000,000.00 in uninsured motorist coverage and defined an insured as "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" The policy, therefore, covered Stuart.

At the time of the accident, Stuart was also covered by two policies issued by State Farm, each of which provided $50,000.00 in uninsured motorist coverage and totaling $100,000.00. The two policies provided that, "[i]f the insured sustains bodily injury while occupying a vehicle which is not your car, or a newly acquired car, this coverage applies <u>as excess to any insured motor vehicle coverage which applies to the vehicle as primary coverage</u>." (emphasis added).

Stuart subsequently settled with Liberty Mutual for $725,000.00. The parties, however, do not dispute that Liberty Mutual is the primary insurer. State Farm moved for summary judgment on the basis that it did not owe Stuart additional coverage according to the provisions in the State Farm policy. The district court granted State Farm's motion, and Stuart now appeals.

---

[2] There is no dispute, however, that Mississippi law governs this case.

<u>Discussion</u>

This Court reviews summary judgments de novo. <u>Krim v. BancTexas Group, Inc.</u>, 989 F.2d 1435, 1444 (5th Cir. 1993). The moving party for summary judgment must show that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In response, the non-movant must "go beyond the pleadings and her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). Lastly, this Court should regard the evidence in the light most favorable to the nonmovant. <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Stuart first contends that the district court erred when it granted State Farm's motion for summary judgment because the $725,000.00 settlement substantially exhausted the $1,000,000.00 in primary coverage provided by Liberty Mutual's policy, as Stuart settled for 72.5% of the primary limits. <u>See Robinette v. Am. Liberty Ins. Co.</u>, 720 F. Supp. 577, 580 (S. D. Miss. 1989) (stating that a plaintiff who had settled a primary insurance claim had not substantially exhausted the primary coverage because she had only settled for 35% of the primary limits and therefore left a "large sum [of money] 'on the table'") (citation omitted). Stuart also heavily relies on <u>Mississippi Farm Bureau Mutual Insurance Co. v. Garrett</u>, 487 So. 2d 1320, 1323 (Miss. 1986), to show that his claim is "prima facie reasonable," given that in <u>Garrett</u>, the Supreme Court of Mississippi held that a plaintiff who had settled for $7,517.00 out of a primary policy limit of $10,000.00 was entitled to $30,000.00 worth of secondary coverage provided by his own uninsured motorist insurance. <u>Id.</u> at 1323-25. Although the secondary insurance contract comprehended an excess clause, the court found that the

3

plaintiff had substantially exhausted the primary limits and the settlement had been negotiated in good faith. Relying on this authority, Stuart argues here that he is entitled to the $100,000.00 in secondary coverage provided by the State Farm policies because he agreed to the $725,000.00 settlement in good faith, and he suffered actual damages that exceed the $1,000,000.00 amount in the Liberty Mutual policy.

In contrast, State Farm counters that it owes no payment obligation to Stuart since the insurance contract explicitly stipulated that the $100,000.00 in aggregated coverage is excess, and Stuart failed to substantially exhaust the underlying primary coverage. See Geiselbreth v. Allstate Ins. Co., 8 F.3d 281, 282 (5th Cir. 1993) (per curiam) (stating that a plaintiff could not collect $75,000.00 in excess coverage because his settlement with the primary carrier "fell far below the policy limits of the primary insurance"). State Farm distinguishes Garrett by noting that although the plaintiff in Garrett recovered 75.1% of the available primary limit and Stuart has similarly recovered 72.5% of the primary limit, the $275,000.00 difference between the settlement and the $1,000,000.00 maximum primary limit in the instant case is significantly weightier than the corresponding $2,483.00 difference in Garrett. Thus, although Stuart and the plaintiff in Garrett recovered equivalent proportionate amounts in their settlements, a vast difference exists between the actual amounts of available primary coverage relinquished in the two cases.[3] State Farm moreover disputes the causation of Stuart's

---

[3] State Farm also distinguishes Garrett on the basis that the potential recovery that Stuart relinquished by settling as compared to that relinquished by the plaintiff in Garrett was 110.75 times greater. It notes that the potential recovery left on the table by Stuart was fully 10,975.31% higher than the remaining potential recovery left by the plaintiff in Garrett. Moreover, State Farm also argues that a significant factor taken into account by the Garrett court in holding that the plaintiff was entitled to the secondary coverage was that three other injured claimants were simultaneously pursuing similar claims under the primary coverage. Garrett, 487 So. 2d at 1324. Although that insurance provided for a per person coverage limit of $10,000.00, it only provided for a coverage limit of $20,000.00 per occurrence. Id. Thus, the Garrett court felt that the plaintiff was further

4

damages, given its contention that many of Stuart's injuries and health problems were preexisting. State Farm also contends that it is somewhat disingenuous for Stuart to settle for $725,000.00 with the primary carrier, relinquishing $275,000.00 in order to avoid litigation, but now to pursue litigation for $100,000.00 in secondary coverage.

The trial court found Geiselbreth controlling in this case and noted that the "Fifth Circuit found that the Geiselbreth's estate could not pursue Allstate [the secondary carrier] because they had not exhausted all the coverage provided by the Kemper [the primary carrier] policy, stating that, '[h]ad the Geiselbreth family been persuaded that the severity of their injuries and claims arising from Mrs. Geiselbreth's death justified recovering more than a $316,000.00 present value [yielding a total payout of $400,000.00] from the insurance company, it would have been eminently worthwhile for them to pursue a lawsuit.'" (citing Geiselbreth, 8 F.3d at 284). The trial court also pointed to this Court's language in Geiselbreth stating:

> an "excess" clause generally provides that if other valid and collectible insurance covers the occurrence in question the "excess" policy will provide coverage only for liability above the maximum coverage of the primary policy or policies . . . . [S]ettlement between an insurance company which is primarily liable and its insured, even though a full, final and complete settlement, does not affect the priority of payment as regards the other insurance clauses unless the amount of settlement exhausts the policy limits; to hold otherwise would allow the companies primarily liable to transfer the liability by making a token settlement.

Id. at 283 (citing 8A Appleman, INSURANCE LAW AND PRACTICE § 4909, at 383 (1981)). Similarly, the trial court also relied on this Court's language in Geiselbreth regarding the public policy effects of such an outcome and emphasized that allowing the plaintiffs in that case to recover against the

_____

prompted to settle. Id. The record indicates, however, that Stuart faced no such "per accident" limitation during the settlement negotiations.

5

secondary carrier would "nearly eviscerate the notion of excess coverage as insurance that protects an insured after the policy limits have been reached and exceeded on primary coverage." Id.

This Court further distinguished Garrett by noting that it derived "from a peculiar and peculiarly compelling set of facts," given that it was undisputed that the plaintiff's damages clearly exceeded the $10,000.00 in primary insurance coverage. Id. at 283-84. Moreover, this Court agreed that holding the secondary carrier liable for the plaintiff's injuries in Garrett was reasonable, in light of the fact that far more resources would have been expended for $2,583.00, the remaining amount of primary coverage after the plaintiff had settled. Id. at 284. Importantly, contrary to what the plaintiffs in Geiselbreth argued, we stated that Garrett does not stand for a broad rule in which "a party whose damages are probably within the primary policy limit may, after "reasonably" settling with the primary carrier, automatically recover from the excess carrier." (emphasis not added). Id.

Here, unlike in Garrett, there is no such indication that Stuart's damages did not fall within the primary policy limit of $1,000,000.00. Not only does State Farm dispute the causation of Stuart's injuries, but had Stuart really believed that his damages exceeded this limit, he would have pursued litigation, which likely would have resulted in a greater recovery for him. Thus, although Stuart and the plaintiff in Garrett recovered similar proportionate settlement amounts, the amounts that they relinquished are entirely disproportionate. Furthermore, that Stuart now pursues litigation to recover $100,000.00, which when added to the $725,000.00 settlement amount yields only $825,000.00, is an important indication that his damages fell below the $1,000,000.00 primary coverage limit, a sum that he argues his damages far exceeded. We, therefore, hold that the district court did not err in

6

granting State Farm's motion for summary judgment because there is "no genuine issue of material fact" and State Farm is "entitled to judgment as a matter of law."[4]  FED. R. CIV. P. 56(c).

<u>Conclusion</u>

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.

---

[4] Stuart also argues that the trial court erred because he has stipulated that the excess carrier is entitled to a full $1,000,000.00 "offset" or "credit" against any judgment rendered.  Because we find that <u>Geiselbreth</u> is controlling, we pretermit discussion of this issue.