960 A.2d 442

**NATIONWIDE INSURANCE COMPANY, Appellant**

v.

**Paul P. SCHNEIDER, Appellee.**

Supreme Court of Pennsylvania.

Argued April 15, 2008.

Decided Nov. 19, 2008.

134

James C. Haggerty, Esq., Swartz Campbell, L.L.C., Philadelphia, for Nationwide Insurance Company.

Craig R.F. Murphey, Esq., MacDonald, Illig, Jones & Britton, L.L.P., Erie, for Pennsylvania Defense Institute.

S. Stanton Miller, Jr., Esq., Dunn & Miller, Media, for Paul P. Schneider.

Scott B. Cooper, Esq., Melissa Nicole Miller, Esq., Schmidt Kramer, P.C., Harrisburg, for amicus curiae Pennsylvania Trial Lawyers Association.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

**_OPINION_**

Justice SAYLOR.

We allowed appeal to determine whether the Motor Vehicle Financial Responsibility Law requires primary underinsured motorist benefits to be exhausted before secondary coverage is implicated and to consider the enforceability of a consent-to-settle clause in an underinsured motorist policy.

In October 1996, police officer Paul P. Schneider ("Appellee") suffered injury when his cruiser was struck by a vehicle driven by Ayanna Lee Cooper. At that time, Ms. Cooper maintained a policy of insurance issued by American Independent Insurance Company providing, _inter alia_, up to $15,000 in liability coverage. Appellee's employer, Upper Darby Township, maintained a policy with Granite State Insurance Company, which included underinsured motorist ("UIM") coverage subject to a one million dollar limit.

Appellee lodged a civil action against Ms. Cooper, defended by American Independent, which offered to settle at the $15,000 limit in exchange for a general release. Granite State gave its consent, upon being informed by Appellee of the claim and offer. Appellee accepted the settlement in May 1999, executing the release and receiving payment.

Subsequently, Appellee pursued a claim for UIM benefits under the Granite State policy. On December 21, 2001, those parties (with Granite State acting on behalf of itself and Upper Darby Township) consummated a structured settlement having a present value of $750,000, or $250,000 less than the policy limit. This settlement also contained a general release.

Two months later, Appellee sought secondary UIM benefits under his personal automobile insurance policy issued by Appellant, Nationwide Insurance Company, which provided for up to $200,000 in stacked UIM coverage. The policy contained an exhaustion clause prescribing that "[n]o payment will be made until the limits of all other auto liability insurance and bonds that apply have been exhausted by payment." The policy also included consent-to-settle provisions, indicating

that an insured must "preserve and protect Nationwide's right to subrogate against any liable party" and obtain Nationwide's written consent to settle any legal action brought against a liable party or release any party.[1] Correspondingly, an express exclusion indicated that coverage would not apply to "[b]odily injury of any insured if the insured settles, without our written consent with a liable party." Appellee attempted to address the contractual exhaustion requirement by extending to Nationwide a "credit" of $1,015,000, the combined amount of limits of Ms. Cooper's liability policy and the primary UIM coverage from Granite State, explaining that he would not seek any benefits from Nationwide unless he could prove that his damages exceeded this amount. After Nationwide denied Appellee's claim, he made a demand for arbitration, as provided in the policy.

In response, Nationwide filed a declaratory judgment action seeking, in the relevant counts, a determination that it had no obligation to pay secondary UIM benefits to Appellee due to his failure to exhaust his primary UIM benefits and obtain Nationwide's consent to settle his primary UIM claims, as required by the policy. Nationwide contended that exhaustion was required not only by the terms of the policy, but also under pertinent priority-of-recovery provisions of the Motor Vehicle Financial Responsibility Law,[2] which provides as follows in the UM/UIM context:

(a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

1. Further, the policy provided:
OUR RIGHT TO RECOVERY
This applies to the extent of any payment we make under this coverage. We will have the first right to any amount the insured receives from any liable party. The insured will ... [h]old in trust for us his right to recover against any such party[.]

2. Act 11 of 1984, P.L. 26 (as amended, 75 Pa.C.S. §§ 1701–1799.7) (the "MVFRL").

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

(b) Multiple sources of equal priority.-The insurer against whom a claim is asserted first under the priority set forth in Subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

75 Pa.C.S. § 1733.

Nationwide pursued summary judgment, and Appellee responded with a cross-motion, arguing that there was no need for exhaustion of primary UIM benefits, as he had extended a credit to Nationwide for the full amount of those benefits as required by *Boyle v. Erie Insurance Company,* 441 Pa.Super. 103, 656 A.2d 941 (1995). Additionally, Appellee asserted that, pursuant to *Nationwide Mutual Insurance Company v. Lehman,* 743 A.2d 933 (Pa.Super.1999), the insurer was required to establish that its interests were prejudiced by Appellee's failure to obtain its consent to settle.

The common pleas court awarded summary judgment in Nationwide's favor. *See Nationwide Ins. Co. v. Schneider,* 69 Pa. D. & C.4th 94 (2004). Initially, the court summarized the circumstances as follows:

It is altogether undisputed that defendant never provided plaintiff with notice of this accident nor of his intention to pursue UIM benefits under the Nationwide policy [during the five-year period between the accident and the demand on Nationwide]. There is also no question that he did not seek plaintiff's permission to settle either of the previous claims for benefits arising from the injuries sustained in this accident. There was also no question in this action that the applicable terms and conditions set forth in the within Nationwide policy clearly and expressly provided that no payment of underinsured motorist benefits would be made

until the limits of all other applicable automobile liability coverage and bonds had been exhausted by payments.

*Id.* at 100. Relative to the exhaustion requirement, the common pleas court first agreed with Nationwide that Section 1733 of the MVFRL requires "exhaustion of one category of benefits before the next may be pursued." *Id.* at 104. The court also observed that *Boyle* and other cases relied upon by Appellee involved the failure to exhaust third-party liability benefits before pursuing primary UIM benefits. Unlike the third-party/primary-UIM context, the court indicated that primary UIM benefits must be exhausted before secondary or excess UIM benefits may be obtained pursuant to Section 1733. *See id.* at 113, 656 A.2d 941 (citing, *inter alia, State Farm Ins. Co. v. Ridenour,* 435 Pa.Super. 463, 470, 646 A.2d 1188, 1191 (1994)). Finally, the court rejected Appellee's extension of "credit" to Nationwide, explaining that "neither the spirit nor the language of the cited authorities would authorize" such a credit. *Id.* at 114, 656 A.2d 941.

Addressing the requirement of consent to settle, the court distinguished *Lehman* on the ground that the insured in that case had provided the insurer with notice of the accident and sought consent to settle. *See Schneider,* 69 Pa. D. & C.4th at 107. Further, the court emphasized that Appellee's claim was for excess as opposed to primary UIM benefits, since Appellee settled for less than the limits of the primary UIM coverage. *See id.* at 109. Under these circumstances, the court held that *Lehman* did not require Nationwide to prove prejudice arising from Appellee's failure to obtain its consent in order to support a denial of coverage under the express policy terms. *See id.*

On appeal, after an initial affirmance by a three-judge panel of the Superior Court, a unanimous *en banc* panel reversed on reargument. *See Nationwide Ins. Co. v. Schneider,* 906 A.2d 586 (Pa.Super.2006). Initially, the court differed with the common pleas court's conclusion that Section 1733 of the MVFRL requires exhaustion, reasoning that Section 1733 "makes no mention of exhaustion of limits." *Id.* at 591. The court further stressed that Appellee had followed the statuto-

ry order of priority by first pursing recovery from the insurer of the vehicle Appellee occupied at the time of the accident, suggesting that this is all that was required by the provisions of Section 1733. *See id.* at 591.

Regarding the contractual exhaustion clause, the court looked to *Boyle,* in which the Superior Court previously had explained that an exhaustion clause is properly construed as protecting the insurance company "against a demand by its insured to fill the 'gap' after a weak claim has been settled for an unreasonably small amount." *Schneider,* 906 A.2d at 593–94 (quoting *Boyle,* 441 Pa.Super. at 108, 656 A.2d at 943). In *Boyle* and *Schneider,* however, the court further indicated that the clause also serves to protect an injured insured against delay in recovery. *See id.* The court explained that, in *Boyle,* to balance these interests, it had determined that the exhaustion clause should be construed as a "threshold requirement" and not as a bar to recovery of UIM benefits. *Id.* Indeed, the court reasoned that strict enforcement of an exhaustion clause

would delay recovery when prompt payment was needed, would lessen the insured's recovery by requiring him or her to pay additional costs, and would unnecessarily burden the judicial system.["]Where the best settlement available is less than the [tortfeasor's] liability limits, the insured should not go to trial in order to determine the issue of damages.["]

*Schneider,* 906 A.2d at 595 (quoting *Boyle,* 441 Pa.Super. at 108, 656 A.2d at 943 (quoting *Schmidt v. Clothier,* 338 N.W.2d 256, 260–61 (Minn.1983))). Thus, the *Boyle* court enforced a credit against UIM coverage equal to the maximum liability coverage of the tortfeasor in satisfaction of the exhaustion clause. *See id.* (citing *Boyle,* 441 Pa.Super. at 109, 656 A.2d at 943–44).

The Superior Court held that *Boyle* was not distinguishable on the ground that it addressed an exhaustion clause directed to third-party liability coverage, as opposed to primary UIM coverage. The court reasoned that the mandatory nature of Section 1731 of the MVFRL, 75 Pa.C.S. § 1731, requiring all liability insurers to offer optional UIM coverage demonstrated "a clear legislative choice in favor of secondary UIM benefits,

pursuant to UIM coverage paid for by the insured, to a claimant whose damages exceed the limits of all available liability and primary UIM policies." *Schneider*, 906 A.2d at 595. Accordingly, the court concluded that the exhaustion clause in Appellee's policy could not operate to bar recovery where Appellee satisfied *Boyle* by extending a credit to Nationwide for the limits of the liability and primary UIM coverage.

On the matter of consent to settle, the Superior Court first recognized that the policy required Nationwide's assent. *See Schneider*, 906 A.2d at 591. The court reasoned, however, that the clause could not be enforced under *Lehman* without an affirmative showing of prejudice to Nationwide, indicating that the enforcement of a consent-to-settle clause to deny benefits absent a showing of prejudice would "frustrate public policy by depriving the insured of benefits for which she had paid." *Id.* at 592 (quoting *Lehman*, 743 A.2d at 938). The Superior Court also concluded that the common pleas court had erred in failing to allocate the burden of establishing prejudice to Nationwide. *See id.* at 593.

Upon Nationwide's petition, we allowed appeal limited to the following questions:

1. Did the Superior Court properly apply the exhaustion rule of UIM litigation to the primary UIM-excess claim contest?

2. Did the Superior Court properly apply the consent to settle rule of UIM motorist litigation in the less than policy limits settlement context?

An appellate court may reverse a summary judgment award if there has been an error of law or an abuse of discretion. *See Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 465, 926 A.2d 899, 902 (2007). The issues in this appeal are framed as legal matters, over which our review is plenary.

## I. Exhaustion

Presently, Nationwide maintains that Section 1733, establishing the hierarchy for payment of primary and excess

UM and UIM claims, necessarily contemplates exhaustion of the primary source before any obligation of payment by the excess source arises, as required by the very nature of primary and excess coverage. Nationwide observes that in *Nicholson v. General Casualty Company of Wisconsin*, 262 Neb. 879, 636 N.W.2d 372 (2001), the Nebraska Supreme Court interpreted a similarly worded UIM hierarchy statute, NEB. REV.STAT. § 60–580(2), as requiring exhaustion of primary UIM benefits before excess UIM coverage could be accessed. Nationwide highlights the following passage from *Nicholson:*

> We conclude that the language of 60–580 required [the insureds] to exhaust their primary UIM coverage ... prior to pursuing a claim under their excess UIM coverage.... The statute provided that payment under successive UIM coverages was to be made in the specified "order of priority" subject to the limit of liability for each applicable policy. It would make little sense for the Legislature to utilize the phrase "order of priority" and to establish a succession of primary and excess coverage unless the exhaustion was prerequisite to proceeding against the excess carrier. When construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible rather than an absurd, result in enacting the statute.

*Nicholson*, 636 N.W.2d at 376.[3] Nationwide contends that *Boyle's* policy rationale, supporting a relaxation of a contractual exhaustion requirement in regards to the third party-primary UIM context (highlighting the private interest of the claimant in prompt payment to compensate for loss and the public interest in settlement to avoid unnecessarily burdening the courts), does not apply to the primary-excess UIM context. The company reasons that

> [i]n the tort-primary UIM context, the Superior Court noted that the private interest of the claimant, i.e[.,] prompt payment to compensate for the loss and the public interest

3. Nationwide also references the holdings in *Nationwide Gen. Ins. Co. v. Perry*, 2 F.Supp.2d 857 (S.D.Miss.1997); *Illinois Nat'l Ins. Co. v. Kelley*, 764 So.2d 1283 (Ala.Civ.App.2000); *Iodice v. Jones*, 133 N.C.App. 76, 514 S.E.2d 291 (1999); and *Donovan v. State Farm Auto. Ins. Co.*, 105 Ohio App.3d 282, 663 N.E.2d 1022 (1995).

of the judicial system, i.e[.,] settlement to avoid unnecessary burden to the courts, favor the rule established in *Boyle*. No such interests, however, predominate in the primary UIM-excess UIM context. In fact, in the case at bar, the defendant, Schneider, has received the $750,000.00 from the primary UIM insurer. Further, any UIM claims, in accordance with the policy provisions, are to be litigated in arbitration. Thus, there is simply no reason to ignore the statutory mandate and hierarchy of payment. Unless and until the first level is exhausted, the second level should not be implicated.

Brief for Appellant, at 14–15.

The Pennsylvania Defense Institute submitted an *amicus* brief in support of Nationwide, emphasizing the narrow range of compelling circumstances in which courts will declare contractual undertakings void based upon public policy. *See generally Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 347–48, 648 A.2d 755, 760 (1994). Among other observations, the Defense Institute also adds that the exhaustion clause is unambiguous and consistent with the legislature's cost-containment goal in the MVFRL.

On the other hand, Appellee argues that Section 1733 does not impose upon an insured an exhaustion of limits requirement where first- and second-priority UIM benefits are implicated. He also contends that the Superior Court's well-settled credit-for-limits rationale from the third-party/primary-UIM context, utilized in *Boyle* and many other cases,[4] logically extends to an exhaustion clause in a secondary UIM policy. According to Appellee, the "fair balance" struck by the court in *Boyle* harmonizes the insured's right to claim UIM benefits for which he has paid and the insurer's right to enforce its

4. *See, e.g., Krakower v. Nationwide Mut. Ins. Co.*, 790 A.2d 1039 (Pa.Super.2001); *Harper v. Providence Washington Ins. Co.*, 753 A.2d 282 (Pa.Super.2000); *Sorber v. American Motorists Ins. Co.*, 451 Pa.Super. 507, 680 A.2d 881 (1996); *Chambers v. Aetna Casualty Sur. Co.*, 442 Pa.Super. 155, 658 A.2d 1346 (1995); *Kelly v. State Farm Ins. Co.*, 447 Pa.Super. 214, 668 A.2d 1154 (1995); *Ridenour*, 435 Pa.Super. at 463, 646 A.2d at 1188; *Kester v. Erie Ins. Exchange*, 399 Pa.Super. 206, 582 A.2d 17 (1990).

exhaustion requirements by permitting the insurer to receive credit for the limits of coverage. Appellee maintains that Section 1733 does not require exhaustion of primary benefits and that Nationwide's position would frustrate the clearly established public policy supporting the provision of UIM coverage. *See* 75 Pa.C.S. § 1731. *Amicus curiae*, the Pennsylvania Trial Lawyers Association (now the Pennsylvania Association for Justice) also contends that the enforcement of an exhaustion requirement would eliminate coverage that is mandated by the MVFRL and supports the application of *Boyle's* credit-for-limits approach.

In construing the statute, our purpose is to give effect to the intent of the Legislature. *See* 1 Pa.C.S. § 1921(a). As noted, Section 1733 provides that, "[w]here multiple policies apply, payment shall be made in the following order of priority:" 1) the policy covering the vehicle occupied by the injured individual at the time of the accident, 2) the policy covering the injured individual. 75 Pa.C.S. § 1733(a). As the Superior Court observed, Section 1733 does not mention exhaustion of policy limits. Indeed, in this regard the statute is readily distinguishable from priority provisions implemented in several other states in which exhaustion is specifically required.[5] Moreover, we differ with the *Nicholson* court's perspective that it would be absurd to establish a priority-of-recovery scheme without an attached exhaustion requirement. To the contrary, such a scheme affords due recognition to the substantial expense involved in litigation, and the potential need for prompt recompense to an injured insured. *Accord Boyle*, 441 Pa.Super. at 108, 656 A.2d at 943. Indeed, it remains a strong, prevailing public policy in Pennsylvania to encourage voluntary settlements. *See Taylor v. Solberg*, 566 Pa. 150, 157–58, 778 A.2d 664, 667 (2001).

5. *See, e.g.,* Tenn.Code Ann. § 56-7-1201(3)(B) (prescribing second-priority status to policies in which the insured is a named insured, *"[i]f uninsured motorist coverage on the vehicle in which the insured was an occupant is exhausted* due to the extent of compensatory damages" (emphasis added)); La. R.S. § 22:680(1)(c)(ii)(bb) (providing access to other UM insurance *"[s]hould ... primary uninsured motorist coverage be exhausted to the extent of damages "* (emphasis added)).

■ We recognize that traditional excess insurance coverage generally is subject to an exhaustion requirement. *See* 2 EUGENE R. ANDERSON ET AL., INSURANCE COVERAGE LITIGATION § 13.4, at 106 (1997) ("Excess coverage attaches only after the primary coverage has been paid out or exhausted."). However, uninsured and underinsured motorist insurance, particularly as it has evolved in Pennsylvania, is not traditional insurance. *Cf. Coughlin v. GEICO*, 69 P.3d 986, 991 n. 19 (Alaska 2003) (distinguishing UIM insurance from traditional excess insurance). Thus, we do not regard the priority scheme established in Section 1733 as implicitly engrafting all accouterments of traditional excess insurance coverage onto the financial responsibility scheme.[6] As such, like the Superior Court, we decline to infer that merely because the Legislature undertook to set a priority for recourse, it also intended to implement an unstated exhaustion requirement.

■ It is a different matter whether the Legislature intended to foreclose contractual exhaustion requirements, or, more broadly, whether such requirements are invalid on account of public policy. The approach disfavoring strict enforcement of such clauses has been applied by Pennsylvania courts since the seminal *Boyle* decision in 1995 and before, *see, e.g.,* *Ridenour*, 435 Pa.Super. at 470, 646 A.2d at 1191, and comports with our strong public policy of encouraging settlements.[7] Further, we differ with Nationwide's contention that

6. The disposition of *Generette v. Donegal Mutual Insurance Company*, 598 Pa. 505, 957 A.2d 1180 (2008), was predicated on the status of UIM carriers as providing "excess" versus "gap" coverage. In *Generette*, however, the term "excess" was employed in a fashion specific to the UM/UIM context, relating to the manner in which UM/UIM benefits supplemented liability coverage (and, by extension, the way in which secondary UM/UIM benefits supplemented primary UM/UIM benefits). *See id.* at 514–15 n. 12, 957 A.2d at 1187 n. 12 (citing *Pennsylvania Nat'l Mut. Cas. Co. v. Black*, 591 Pa. 221, 244–45, 916 A.2d 569, 583 (2007) (Cappy, C.J., dissenting)). *Generette* does not indicate that the MVFRL requires secondary UM/UIM coverage to be provided on terms wholly coterminous with traditional excess insurance coverage.

7. Pennsylvania common law has shown a similar hostility towards insurance-policy clauses restraining assignments (which are often employed to facilitate settlements). *See Egger v. Gulf Ins. Co.*, 588 Pa. 287, 296, 903 A.2d 1219, 1224 (2006) (explaining that such provisions, as

this and other public policy concerns do not pertain at the second-priority level of UM and UIM insurance coverage. It seems beyond reasonable dispute that settlements at the first-priority level of UM/UIM coverage can alleviate uncertainties and expense associated with litigation and afford prompt payment to injured persons. Moreover, where, as Appellee indicates is the case here, the degree of underinsurance is substantial, benefits provided by a first-priority UIM insurer may afford the only practical avenue for meaningful, initial recompense.

We recognize that the Insurance Department has not sought to restrain the issuance of UM/UIM policies in Pennsylvania containing the exhaustion clause, and that its interpretation of the MVFRL would ordinarily be entitled to substantial deference. However, this Court invited the Department to file an *amicus* brief in the present appeal proceedings, but the agency declined to offer its perspective. Instead, the Department set forth its view that the case does not involve issues within its regulatory expertise or directly impacting widespread consumer interests. Given this response, we will not apply the ordinary deference rule, since that rule is premised on agency expertise. *See, e.g., Popowsky v. PUC*, 594 Pa. 583, 606, 937 A.2d 1040, 1054 (2007).[8]

applied upon and after accrual of a contemplated loss, are void as against public policy).

8. While certainly the Department was free to decline our invitation to participate in this appeal as an *amicus,* we note that its first reason for doing so is incongruous with its responsibilities. The Department is charged with the obligation to administer and enforce insurance-related matters under the MVFRL, *see* 75 Pa.C.S. § 1704(b), and, as such, has the initial responsibility to interpret the statute's requirements. Furthermore, as part of its duties, the Department is to approve policies issued in Pennsylvania. *See* 40 P.S. § 477b. Moreover, the Department, unlike this Court, is vested with tools to examine how insurance policy terms affect the remedial and cost-containment purposes of the MVFRL. *See* 75 Pa.C.S. §§ 1799.5, 1799.6 (affording the Insurance Department authority to monitor insurer profits, undertake analysis of market studies, conduct random field surveys, and undertake other forms of investigation). While this Court ultimately maintains the final responsibility to interpret or construe statutes, this function is appropriately informed by the approach of the expert administrative agency. Here, however, the designated specialist has advised that it has not

In summary, in the absence of express legislative direction or administrative agency involvement, we find the Superior Court's longstanding application of a credit-for-limits approach to contractual exhaustion requirements in the UM/UIM context to represent a reasonable compromise. The approach maintains a meaningful role for the relevant policy provisions, while at the same time balancing the cost-containment and remedial objectives of the MVFRL and advancing the strong public policy favoring settlements. Accordingly, at least in the consumer setting, we will adopt this position as our own. *Cf.* IRIVIN E. SCHERMER AND WILLIAM SCHERMER, 3 AUTO. LIABILITY INS. 4TH § 42:12 (2008) ("Where less-than-limits settlements would not have satisfied the more rigid requirements of underinsured motorist exhaustion preconditions to underinsured motorist coverage, most courts have felt it necessary to declare the provision void on public policy grounds.").

## II. Consent to Settle

 Next, Nationwide invokes the policy provisions barring recovery of UIM benefits where the underlying action is

gained expertise in a matter which is clearly subject to its province. Thus, while ordinarily we would have inferred that the Department's apparent approval of the exhaustion requirement appearing in UM/UIM policies issued in Pennsylvania reflected a reasoned, expert assessment concerning the validity of the requirement, it now appears that such apparent approval, in fact, has occurred by default.

Further, although this Court has previously withheld comment, the Department's position also casts some light on why, despite its obligation to "make rules and regulations necessary for the administration" of the insurance-related provisions of the MVFRL, 75 Pa.C.S. § 1704(b), it has failed to update its regulations containing a badly outdated form for uninsured motorist insurance only, *see* 31 Pa.Code § 63.2(a) & Exhibit C, in the wake of the passage of the MVFRL, the corresponding movement in the direction of public policy, the statute's provision for underinsured motorist insurance, and the substantial developments in the decisional law.

The Insurance Department's second reason for declining comment here derives from its opinion that this case does not directly impact widespread consumer interests. Exhaustion requirements, however, regulate consumer access to an entire reservoir of UM/UIM coverage at the second-priority level. Facially, this appears significant, if not substantial, in terms of consumer impact. Although we lack the tools to test the Department's assertion empirically, the agency's indication of a lack of relevant expertise diminishes our confidence that its evaluation of consumer impact is concretely grounded.

settled without consent. Interestingly, however, Nationwide does not seek strict enforcement of such provisions. Rather, it indicates that it is not challenging the propriety of the *Lehman* approach requiring a demonstration of prejudice as a prerequisite to enforcement. *See* Brief for Appellant, at 21 ("In fact, the UIM insurer should be required to establish prejudice in order to avoid the obligation to provide coverage where consent to settle the underlying action was not obtained."). *See generally Lehman,* 743 A.2d at 941 (citing *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977)). According to Nationwide, the prejudice to a second-priority insurer is the shortfall or gap between the settlement amount and the available first-priority coverage. *See id.* at 21–22 ("[I]n the less than policy limits settlement, without consent, the UIM insurer is prejudiced by its inability to pursue and recover the insurance monies which the claimant 'left on the table.' "). Nationwide contends that pursuant to *Daley–Sand v. West American Insurance Company,* 387 Pa.Super. 630, 564 A.2d 965 (1989), UIM insurers may address a request for consent to settle by either:

1) Consent[ing] to the settlement of the underlying action, thereby allowing the claimant to execute a release extinguishing its subrogation rights; or

2) Refus[ing] to consent to the settlement of the underlying action, thereby tendering to the claimant the amount of the settlement offer and obtaining, in return, an assignment from the claimant of all claims in the underlying action, preserving its subrogation right.

Brief of Appellant at 20.

Here, Nationwide explains that Appellee settled his primary UIM claim for $750,000, an amount $250,000 less than the available primary UIM limits and $50,000 more than the limits of the excess UIM coverage available from Nationwide. Thus, Nationwide argues that, contrary to the Superior Court's conclusion, it was indeed prejudiced by Appellee's settlement, because it cannot recoup the gap from the primary UIM insurer. According to Nationwide, it would never have been required to pay its monies if it had been given the opportunity

to exercise its *Daley–Sand* rights. While recognizing that this Court has not specifically addressed the right of insurers to recoup the gap monies between the settlement amount and the limits of coverage, Nationwide observes that other jurisdictions have held that such a right exists. *See Gusk v. Farm Bureau Mutual Ins. Co.*, 559 N.W.2d 421 (Minn.1997).

In response, Appellee suggests that the purpose of a consent-to-settle clause is to preserve subrogation rights and observes that Nationwide conceded in its brief to the Superior Court that it possessed no rights of subrogation against Appellee's primary UIM provider. Appellee also argues that Nationwide has failed to adduce sufficient facts to demonstrate prejudice in any other form. The Pennsylvania Trial Lawyers Association asserts that forcing insureds to seek out consent for settlement and waiver of subrogation from every other UIM carrier implicated in a case would result in increased premiums due to insurers' need to conduct investigations on claims that may never, in fact, be made. It also maintains that the fact that the underlying claim is a UIM claim, as opposed to a third-party claim, is a distinction without difference, warranting application of the same equitable principles that guided the Superior Court in refusing to enforce an exhaustion clause in *Boyle*. In this regard, the organization observes that the concerns regarding the unnecessary burden that would be placed on the judicial system if insureds were prevented from accepting third-party settlements are the same for UIM settlements, particularly as arbitration is no longer required in UIM cases. *See Insurance Federation of Pa. Inc. v. Commonwealth, Dep't of Ins.*, 585 Pa. 630, 889 A.2d 550 (2005).

Initially, we note that Nationwide's present arguments concerning prejudice are materially different from those which it presented in the Superior Court. There, Nationwide argued that the *Lehman* rule was not applicable at the second-priority level. *See Brief for Appellee, Nationwide Ins. Co. v. Schneider*, 2004 WL 3251479, *19–20 (Pa.Super. April 23, 2004). Further, Nationwide contended that, in all likelihood, it would

have withheld its consent to settle because of the $250,000 shortfall between the settlement and the insurer's exposure at the first-priority level. *See id.* at *21. Nationwide complained that it was never given the opportunity to consent, or refuse consent, and "[t]hus, we will never really know what might have occurred," although "[i]t is reasonable to assume that consent would not have been forthcoming." *Id.*

To the degree an insurer is required to establish actual prejudice to enforce consent-to-settle provisions (as Nationwide now concedes),[9] we find the above explanation to be insufficient. Actual prejudice is circumstance dependent and should turn on such factors as the strength of the plaintiff's proofs of liability on the part of the underinsured motorist, the ability to demonstrate causally-related damages equal to or greater than the policy limits, and potentially the reasonableness of a withholding of consent on the part of the insurer.[10] Indeed, in this Court's *Brakeman* decision, upon which *Lehman* was founded, the Court remanded to provide the insurer the opportunity to develop a record concerning prejudice. *See Brakeman,* 472 Pa. at 77–78, 371 A.2d at 198–99. Thus, the Superior Court was not bound to accept Nationwide's abstract prejudice argument, which Nationwide has abandoned at this juncture in any event.

9. In light of this concession, we decline to finally determine in this case whether a showing of prejudice is required of all insurers in this setting. Rather, we will apply the prejudice requirement for purposes of this case, with the observations that it remains the prevailing law of this Commonwealth under *Lehman* and its progeny unless and until a meritorious challenge to the rule is presented to this Court, and that Nationwide's *amicus,* The Defense Institute, appears to maintain that prejudice should not be required.

10. Parenthetically, Nationwide appears to argue that the *Daley–Sand* decision forecloses an insurer's ability to withhold consent. As noted above, however, our approach to this case is to decide it based on the arguments presented and to leave further refinements to future cases in which other lines of reasoning are developed. As to *Daley–Sand,* here we note only that the decision was embodied in a closely-written opinion affirming an equitable remedy afforded by a trial court and "hold[ing] only that the operation of the consent to settle clause in this case as now written frustrates public policy." *Daley–Sand,* 387 Pa.Super. at 642, 564 A.2d at 970.

We also find Nationwide's current position, entailing a bald invocation of *Daley–Sand,* to be insufficient to establish prejudice. It simply is not self-evident that a second-priority insurer having a maximum exposure of $200,000 would tender $750,000 to the plaintiff to thwart a settlement in order to obtain an assignment to step into the plaintiff's shoes relative to the first-priority insurer. Such a decision obviously would require careful consideration and be fact-driven. Nationwide's position, however, is materially undeveloped in terms of salient facts. Since Nationwide has not offered a sufficient factual predicate to support the conceded prejudice requirement, we find no basis to disturb the decision to overturn the common pleas court's award of summary judgment in the company's favor.

In closing, we observe that the Superior Court not only reversed the common pleas court's order awarding summary judgment in Nationwide's favor, but it also directed the matter to arbitration, thus effectively awarding summary judgment in favor of Appellee in the declaratory judgment proceedings. However, on the matter of the consent-to-settle clause, the Superior Court's rationale concludes with the statement that "the trial court erred by failing to place the burden of establishing prejudice upon Nationwide," *Schneider,* 906 A.2d at 593, and such conclusion does not equate to the proposition that it was impossible for Nationwide to establish prejudice on an evidentiary record or that Nationwide had forfeited its ability to attempt to do so. Appellee, however, repeatedly represented throughout this litigation that the operative facts were not in dispute and that the controversy could be resolved on the existing pleadings and summary-judgment submissions, and Nationwide has not disputed this representation. Nationwide also does not seek a remand for development of an evidentiary record regarding its asserted prejudice in its present brief. For these reasons, it does not appear that Nationwide has preserved the opportunity to present evidence at this juncture.

The order of the Superior Court is affirmed.

Justice TODD and Justice McCAFFERY did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justice EAKIN and BAER join the opinion.